IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cr-1315-WJM-STV

JENNIFER FREELS,

    Applicant,

v.

RYAN LONG, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER ADOPTING JULY 25, 2019 RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING WRIT OF HABEAS CORPUS

Plaintiff Jennifer Freels ("Freels") is an inmate in the custody of the Colorado Department of Corrections. Freels seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that certain alleged errors during her trial proceedings in state court rendered her subsequent conviction unconstitutional. (ECF No. 1.) On July 25, 2019, United States Magistrate Judge Scott T. Varholak issued a recommendation ("Recommendation") that the Court review Freels's contentions *de novo* (as opposed to reviewing them under the deferential standard that § 2254 normally requires), but that Freels's petition should be denied on its merits. (ECF No. 34.) Freels filed a timely objection ("Objection"). (ECF No. 35.)[1] Defendants filed no response, nor any objection

---

[1] The Recommendation was mailed to Freels no earlier than July 25, 2019, meaning her deadline to respond was no earlier than August 12, 2019. *See* Fed. R. Civ. P. 72(b)(2) (establishing 14-day deadline to file objections); *id.* 6(d) (adding 3 days due to service by mail). Freels's certificate of service states that she deposited her objection in the prison mailbox on August 12, 2019. (ECF No. 35 at 4.) Under the "prison mailbox rule," this is sufficient. *See Price v. Philpot*, 420 F.3d 1158, 1163–64 (10th Cir. 2005).

to the portions of Judge Varholak's reasoning that are unfavorable to them.

For the reasons set forth below, the Court agrees with Judge Varholak that Freels is not entitled to habeas relief.  Accordingly, her application for such relief is denied and this matter is terminated.

## I.  LEGAL STANDARDS

### A.     Section 2254 Standard

Freels seeks a writ of habeas corpus under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This statutory scheme can be broken out into a series of questions:

1. Is the petitioner in custody pursuant to the judgment of a state court?[2]

2. Was the claim on which the petitioner bases his or her petition raised in his or her state appellate or post-conviction proceedings?[3]

3. Did the state court's decision on the petitioner's claim contradict or unreasonably apply federal law as established clearly by the United States Supreme Court?  Or, alternatively, did the state court's decision on the

---

[2] This is undisputed here, and will receive no further analysis.

[3] For the claims at issue here, this is not in dispute and will receive no further analysis. (See ECF No. 16 at 2.)

2

petitioner's claim rely on an unreasonable determination of facts in light of the evidence presented to the state court?

A decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Id.* at 406.

As for the "unreasonable application" prong, it applies when "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A state court's decision is "unreasonable" in this sense "when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).

If a state court decision runs afoul of these standards, the applicant is not automatically entitled to a writ of habeas corpus. Rather, the Court must then go to the merits of the applicant's claim, without deference to the decision(s) of the state court. *See, e.g.*, *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying incompetency claim is unencumbered by the deference [§ 2254] normally requires."). And harmless error analysis may also

3

apply, so long as the error was not "structural" (*i.e.*, so fundamental that no inquiry into harm is needed).  *See Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).

**B.     Rule 72(b) Standard of Review**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to."  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

## II.  BACKGROUND

Except in two instances that will be discussed below, Freels does not object to the Recommendation's recitation of the relevant background.  The Court has discovered no clear error in that recitation and therefore treats the unobjected-to portions as undisputed.  The Court finds the following summary adequate for present purposes,

4

with additional details to be discussed in the Analysis section, below.

On November 2, 2007, Freels shot her husband in the head at their home in Northglenn, Colorado, killing him instantly. (ECF No. 34 at 2; *see also* Register of Action for Adams County Case No. 2007-CR-3399 ("Register of Action"), at 1.)[4] She admitted to the shooting but asserted self-defense. (ECF No. 34 at 2.) The Hon. Mark D. Warner, Adams County (Colorado) District Judge, presided over her prosecution. (Register of Action at 3.) At trial in August 2008, the jury hung and the court declared a mistrial. (ECF No. 34 at 2; Register of Action at 10.)

In preparation for the second trial, Freels herself filed a motion for new counsel because she believed her defense attorneys were providing ineffective assistance by not allowing her to fully testify regarding the circumstances that prompted Freels to shoot her husband. (ECF No. 34 at 2; Register of Action at 12.) Judge Warner held an *in camera* hearing on that motion in mid-October 2008 and denied it, so Freels elected to discharge her counsel and proceed *pro se*. (*Id.* at 12–13.) Judge Warner appointed a new defense attorney, Mr. Jeffrey Doniger, as advisory counsel. (*Id.* at 14.)

Ten days later, Judge Warner *sua sponte* reconsidered his handling of Freels's motion for new counsel. He concluded that he should have found "the functional equivalent" of a complete breakdown in communication between Freels and her former attorneys, and so he should have granted the motion and appointed new counsel. (*Id.*) He therefore changed his previous denial of the motion to a grant, and converted Mr. Doniger from advisory counsel to appointed counsel. (*Id.*) At a hearing shortly afterward, Freels confirmed that she accepted Mr. Doniger as her new attorney. (ECF

---

[4] The Register of Action has not been filed on the CM/ECF docket. Due to its importance, the Court will attach it to this order as Attachment 1.

5

No. 34 at 2–3.) Judge Warner set a final pretrial conference for March 25, 2009, and a new trial date of March 30, 2009. (Register of Action at 14.)

On March 24, 2009—a day before the final pretrial conference—Judge Warner held a hearing on a motion *in limine* and on a new request by Freels to proceed *pro se* with advisory counsel. (*Id.* at 16.) She also requested a continuance of the trial so she could be better prepared. (*Id.*) Judge Warner reserved his ruling on that issue until the final pretrial conference the next day. (*Id.*) There, he denied Freels's request, finding that it was timed for purposes of creating delay and gaining a tactical advantage. (ECF No. 34 at 3–4.) Against Mr. Doniger's advice, Freels then waived her right to a jury trial. (*Id.* at 4; Register of Action at 16.)[5]

A trial to the court began on March 30, 2009, with Mr. Doniger continuing to represent Freels. (ECF No. 34 at 4.) The evidence "overwhelmingly" suggested that Freels's husband died from a "contact [*i.e.*, point-blank] gunshot wound to the back of his head," casting serious doubt on Freels's story that her husband "was threatening her with a knife and that she only acted in self-defense." (*Id.* (internal quotation marks omitted).)[6] Judge Warner found Freels guilty of first-degree murder and imposed a mandatory sentence of life without parole. (*Id.*)

Freels appealed Judge Warner's denial of her request to represent herself to the Colorado Court of Appeals ("CCA"). (*Id.*) In an unpublished disposition dated June 30, 2011, the CCA affirmed Judge Warner, but on alternate grounds. Instead of upholding Judge Warner's decision that Freels's request had been made to create delay, the CCA

---

[5] She says she did so "because I wanted to get it over with" and because "I thought Judge Warner was very strict and would try to be fair." (ECF No. 35 at 2.)

[6] Freels has since admitted at least that she "shot [her husband] from behind." (ECF No. 35 at 3.)

6

said that Freels had not clearly and unequivocally demanded to proceed *pro se*, and so was not entitled to proceed *pro se* under the relevant case law. (ECF No. 12-4 at 15–21.)

After the Colorado Supreme Court denied review of the CCA decision, Freels began state postconviction proceedings. (ECF No. 34 at 5.) She argued that Mr. Doniger had been ineffective for, as relevant here, failing to advise her that Judge Warner might deny her self-representation request if not timely presented, and failing to timely bring the self-representation issue to Judge Warner's attention. (*Id.*)[7] The Hon. Robert W. Kiesnowski, Adams County District Judge, presided over Freels's postconviction proceedings at the trial court level. (*See* Postconviction Review Order ("PCR Order") at 16.)[8] He took testimony from Freels and Mr. Doniger and found Freels not credible to the extent she asserted that she had been discussing self-representation with Mr. Doniger throughout the five months between his appointment by Judge Warner and the week before trial. (*Id.* at 10–12.) Rather, said Judge Kiesnowski, Freels's "decision to represent herself" had been "of recent advent," *i.e.*, shortly before the March 24, 2009 hearing in which it was raised. (*Id.* at 10.) Having thus found that the factual predicate for ineffective assistance was not true, Judge Kiesnowski denied postconviction relief. (*Id.* at 12–13.)

---

[7] Freels asserted two additional ineffective assistance theories: (1) failing to request disqualification of Judge Warner for bias, and (2) failing to present expert testimony about the effects of trauma on memory. (*Id.*) Freels abandoned the disqualification claim by failing to assert it in her § 2254 petition (*see* ECF No. 1 at 9–22), and she abandoned the expert testimony claim by failing to object to Judge Varholak's recommendation that the claim be rejected (*compare* ECF No. 34 at 21–23 *with* ECF No. 35). There is no clear error in that portion of the Recommendation and so it is adopted. Accordingly, the Court will not further discuss either of these two theories.

[8] The PCR Order has not been filed on the CM/ECF docket. Due to its importance, the Court will attach it to this order as Attachment 2.

Freels appealed to the CCA, which again affirmed on alternate grounds. The CCA said that its prior decision on direct appeal (finding that Freels had failed to unequivocally ask to proceed *pro se*) was binding under the law-of-the-case doctrine, so her inability to represent herself was attributable to her own actions, not those of Mr. Doniger. (ECF No. 12-8 ¶¶ 13–15.)

The Colorado Supreme Court denied review of that decision (ECF No. 34 at 7) and Freels then filed her § 2254 petition in this Court (ECF No. 1).

### III. ANALYSIS

Freels asserts the following claims for review by this Court (among others that she has since abandoned):[9]

> (1) The state court committed structural error when it violated [her] constitutional right of self-representation;
>
> (2) The state court erred in denying [her] claim that trial counsel was ineffective for not properly advising her the court could deny her request to represent herself at trial if not timely made; [and]
>
> (3) The trial court erred in denying [her] claim that trial counsel was ineffective for not timely advising the court [she] wanted to exercise her right to self-representation . . . .

(ECF No. 16 at 2; *see also id.* at 3 (no dispute from Respondents that Freels properly exhausted these claims in state court).) The Court will analyze these claims in the order presented.

### A. Right to Self-Representation

Although Freels has framed this first claim as a question of whether the state court erred in denying her request to proceed *pro se*, the initial question is not, strictly speaking, whether the state court erred, but whether its decision on this issue "was

---

[9] *See* n.7, above.

8

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If not, the Court must defer to that decision, regardless of its own views on the merits. If so, the Court may reach the merits *de novo*. (*See* Part I.A, above.)

   1. <u>The CCA's Decision that Freels's Request Was Equivocal</u>

Judge Varholak analyzed the CCA's direct appeal decision,[10] and concluded that the CCA identified the proper legal principles—*i.e.*, "a request to proceed pro se must be clear and unequivocal, *see* [*Faretta v. California*, 422 U.S. 806, 835 (1975)]"—but that "most reasonable jurists would conclude that the CCA was mistaken in finding that [Freels's] request was not clear and unequivocal." (ECF No. 34 at 12.) Respondents have not objected to this finding, and the Court otherwise agrees with Judge Varholak.

At the March 24, 2009 hearing at which Freels asked to represent herself, Freels's first expressed her desire in these words:

> Well, I would like to say that I would really like to get this over with, and I would really like to have someone doing this, the talking for me.
>
> But I feel that the strategy, once again, is at issue and it's too important. If I have to do this myself, and I do, that is what I'll do, no matter whether I'm granted a continuance or not. But that would be extremely helpful and that's my big issue right now, a continuance, and if at all possible advisory counsel as well.

(March 24, 2009 Tr. at 9.)[11] This is arguably equivocal, but the Court need not decide

---

[10] Judge Warner and the CCA decided the self-representation issue on different grounds, but the job of a court resolving a § 2254 application is to analyze "the last reasoned state-court decision" on the issue in question. *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013); *accord Church v. Sullivan*, 942 F.2d 1501, 1507 (10th Cir. 1991). Accordingly, Judge Varholak properly focused on the CCA's direct appeal decision.

[11] The transcript of the March 24, 2009 hearing has not been filed on the CM/ECF docket. The Court will therefore attach it to this order as Attachment 3.

9

that issue either way in light of what happened next. Judge Warner asked for the prosecution's position, and the prosecution objected that Freels had "not met the legal threshold to represent herself" because "the request to proceed pro se must be made in very certain and unequivocal terms." (*Id.*) The prosecution also stated that "the constitutional right to self representation may not be used to impede the efficient administration of justice," but at the end of its argument, the prosecution returned to its claim "that her request for an attorney is equivocal." (*Id.* at 10.)

Before Judge Warner could rule, Freels spoke up and asked to "make one more point." (*Id.* at 11.) Judge Warner acquiesced, and Freels—having just heard the prosecutor say that her request to proceed *pro se* could be denied because it was not expressed unequivocally—stated as follows:

> Back in October, I'd asked the Court to grant me advisory counsel so that I could represent myself at that time, that was what I wanted to do then. That I was given the gift of an attorney, was a wonderful gesture, and I think I tried to take advantage of that, but I have come back around to where I was at that time. Strategy is too important. And I have to represent myself in order to put forth a strategy that I feel is the only one that matters.
>
> I have to represent myself, whether it's next week or whenever, that's what I have to do. That I need more time. I really need time to prepare, but I have to do this myself no matter what. Unquestionably.

(*Id.*) Such language cannot be anything but unequivocal.

The CCA dismissed this language as "excerpts [from Freels's various statements that] can be read in isolation to communicate a desire for self-representation." (ECF No. 12-4 at 25.) The CCA felt that "the trial court record in its entirety [referring to all of the proceedings related to self-representation, including those several months earlier]" showed that Freels "did not make a clear and unequivocal request proceed pro se."

10

(*Id.*)  But Judge Varholak is correct that most reasonable jurists would not adopt this approach, partly because it simply misreads the record.

The CCA seemed to view the October 2008 proceedings that led to Mr. Doniger's appointment as an instance of Freels flip-flopping on the question of self-representation. That is incorrect.  In the wake of the mistrial, Freels moved for new counsel (not to represent herself).  Only when Judge Warner denied that request did she seek to discharge her lawyers and represent herself.  She apparently made this request unequivocally because Judge Warner agreed to allow self-representation.  When he reconsidered his ruling, he reversed himself on the question of whether Freels had shown an entitlement to new counsel, not on any doubt that she had unequivocally decided to represent herself.

In other words, nothing in the record before the March 24, 2009 hearing showed equivocation on Freels's part about self-representation.  And when she heard the prosecutor tell Judge Warner at that hearing that he should deny the self-representation request because it was equivocal, she spoke up to say, "I have to do this myself no matter what.  Unquestionably."  (March 24, 2009 Tr. at 11.)

Accordingly, the Court adopts Judge Varholak's recommendation that the CCA unreasonably applied clearly established Supreme Court precedent.

2.  <u>Freels's Right to Represent Herself</u>

Addressing the claim *de novo*, Judge Varholak further concluded that Freels "did not properly invoke her right to proceed pro se because the request was untimely in that it was made for the purposes of delay and to gain tactical advantage."  (ECF No. 34 at 14.)  Judge Varholak explained,

> [Freels's] request to proceed pro se in March 2009 was

made in conjunction with a motion for a continuance. Allowing [Freels] to proceed pro se may have necessitated a lengthy continuance for [Freels] to prepare her own defense, in a case that had already been tried once and had been pending for over a year, and where trial had already been rescheduled four times.

For these reasons, the Court concludes that [Freels] did not properly invoke her right to self-representation . . . .

(*Id.* at 16–17 (citations omitted).) *Cf. Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999) ("the right to self-representation . . . is not absolute" and can be forfeited if the assertion is "untimely" or otherwise made "for purposes of delay" (internal quotation marks omitted)).

Freels objects as follows:

> My pro se request was unrelated to my request for a continuance. . . . I needed two weeks at the outside but would have settled for less; [I] could have managed with the time already allotted, but I didn't think it would hurt to ask for more. Boy was I wrong. Once I saw that the court was making a package deal out of continuance and pro se, I tried to put a "never mind" on the continuance, but they weren't having it.
>
> * * *
>
> [E]very day I spent locked up [in pretrial detention] was causing irreparable harm to my only child . . . ; my home . . . ; [and] my bank account . . . . How would another delay help me out there? Where was the tactical advantage in any of that?

(ECF No. 35 at 1, 2.)[12]

---

[12] Freels also objects to Judge Varholak's statement that Judge Warner ruled that "the request to represent herself was based on delay and to gain a tactical advantage, not because she intended to represent herself." (*Id.* at 1 (quoting ECF No. 34 at 6) (emphasis removed).) Freels says that, "[o]ut of all the proceedings related to my case, not even the most adversarial ever suggested that I didn't intend to represent myself." (*Id.*) However, this portion of Judge Varholak's recommendation is simply a summary of Judge Warner's ruling. Freels is correct that Judge Warner's ruling ended with his conclusion that her self-representation request was based on delay and to gain a tactical advantage—in other words, Judge Warner did not

12

The record does not support Freels's key premise that "[her] pro se request was unrelated to [her] request for a continuance" and that she "tried to put a 'never mind' on the continuance." At first she told Judge Warner, "If I have to do this myself, and I do, that is what I'll do, no matter whether I'm granted a continuance or not." (March 24, 2009 Tr. at 9.) Then, after hearing the prosecution's position, she stated, "I have to represent myself, whether it's next week or whenever, that's what I have to do. That I need more time. I really need time to prepare, but I have to do this myself no matter what." (*Id.* at 11.) This language is most reasonably interpreted as attempting to preserve the "package deal" (as Freels puts it) with only a reluctant nod to the possibility of going to trial *pro se* without a continuance.

Accordingly, the Court agrees with Judge Varholak that Freels's request to represent herself was lawfully denied due to its untimeliness. The Court therefore adopts this portion of the Recommendation.[13]

## B. Ineffective Assistance of Counsel

Judge Varholak treated Freels's claims 2 and 3 as two aspects of the same claim. Freels does not object to this approach, and the Court otherwise agrees with Judge Varholak that claims 2 and 3 are not meaningfully separable. The Court will therefore analyze them together.

The CCA, on appeal from Judge Kiesnowski's postconviction order, held that it

---

additionally rule that she lacked intent to represent herself. (*See* March 24, 2009 Tr. at 13–14.) But the substance of Judge Varholak's Recommendation does not rely on a misunderstanding about the scope of Judge Warner's ruling. (*See* ECF No. 34 at 10–17.) This objection is therefore immaterial.

[13] It is also worth noting that if Judge Warner had *granted* the self-representation request but *denied* a continuance (as Freels seems to believe he should have done), and if Freels had then been convicted, she almost certainly would have argued on appeal—and eventually in these proceedings—that the denial of a *continuance* violated her right to prepare a defense.

13

was required to affirm because its decision on direct appeal established that Freels's inability to proceed *pro se* was her own fault, so she could not attribute that inability to ineffective assistance of counsel. Because this holding derived from an unreasonable application of federal law, Judge Varholak ruled that this holding, like the underlying holding, may be reviewed without deference to the state court. (ECF No. 34 at 19.) Again, Respondents do not object to Judge Varholak's analysis. This Court finds no clear error, and therefore agrees that it may review Freels's claims *de novo*.[14]

An ineffective assistance of counsel claim has two basic elements: (1) counsel's performance was objectively deficient, and (2) counsel's objectively deficient performance caused prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984). Judge Varholak assumed for argument's sake that Mr. Doniger's performance was objectively deficient and concluded that Freels still cannot establish prejudice. (ECF No. 34 at 19.) Judge Varholak's conclusion turns on a finding that Freels did not inform Mr. Doniger of her intent to represent herself until two weeks before trial. (*See id.* at 3; *see also* ECF No. 1 at 19–20 (Freels's argument that, "[h]ad [Mr. Doniger] immediately informed the court [of Freels's desire to represent herself], the court could have considered this request two (2) weeks prior to the trial date").) In this light, Judge Varholak reasoned that "[e]ven if Attorney Doniger had raised [Freels's] request 14 days prior to trial [instead of six days], such a request would still constitute a last-minute delay tactic" that Judge Warner "almost certainly" would have rejected. (ECF No. 34 at 20.)

---

[14] Arguably, the Court's ability to review Freels's claims *de novo* flows from the CCA's failure to reach those claims on the merits, not the CCA's reliance on its erroneous direct appeal decision. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (review is *de novo* if the state court "did not reach the merits of [the prisoner's] claim"). Either way, review is *de novo*.

14

Freels does not specifically object to this part of the Recommendation. However, she takes issue with Judge Varholak's statement that Judge Kiesnowski found in his postconviction decision that Freels "had never indicated during the five months between appointment of substitute counsel after the first trial and the pretrial conference that she wanted to proceed pro se." (ECF No. 35 at 1 (quoting ECF No. 34 at 5–6).) Freels describes this as "blatantly untrue. [Judge Kiesnowski] did not make that determination, possibly because the recorded and transcribed testimony of Jeff Doniger said the complete opposite." (*Id.* (emphasis removed).)

Here, Judge Varholak was only summarizing Judge Kiesnowski's decision (not making any ruling or recommendation), and Judge Varholak's summary is accurate, with the understanding that Judge Kiesnowski was referring to communications with Judge Warner, not with Mr. Doniger. (*See* PCR Order at 10 ("the court finds that more than five-months elapsed from the new trial setting to the pre-trial conference, but not once during that time did [Freels] attempt to notify the court that she desired to represent herself").) Even so, Judge Kiesnowski *also* found that Freels's communications with Mr. Doniger about representing herself had been "of recent advent" compared to the March 24, 2009 pretrial conference—more specifically, "in the two weeks leading up to trial." (*Id.* at 10, 12.)

Again, this is the premise on which Judge Varholak relied, and Freels states no objection to the premise, nor to the ensuing conclusion that Judge Warner would have reached the same result even if the matter had been brought to him fourteen days ahead of time, instead of six. Thus, to the extent Freels states any objection related to Judge Varholak's recommendation regarding Claims 2 and 3, she nonetheless fails to address the substance of the recommendation. In this light, the Court finds no clear

15

error in Judge Varholak's reasoning and so adopts this portion of the Recommendation—meaning that the Court adopts the Recommendation in full.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation of United States Magistrate Judge (ECF No. 34) is ADOPTED;

2. Freels's Objection (ECF No. 35) is OVERRULED;

3. Freels's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is DENIED;

4. Pursuant to 28 U.S.C. § 2253(c), no certificate of appealability will issue because Freels has not made a substantial showing of the denial of a constitutional right;

5. Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Freels files a notice of appeal, she also must pay the full appellate filing fee (currently $505) or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Federal Rule of Appellate Procedure 24; and

6. The Clerk shall enter final judgment in favor of Respondents and against Freels, and shall terminate this case.  The parties shall bear their own costs.

16

Dated this 13th day of January, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge